UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME P. STACHOWIAK,

                Plaintiff,         Case No. 12-12199
                                      Honorable Sean F. Cox
                                      Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [15, 19]**

Plaintiff Jerome P. Stachowiak ("Stachowiak") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [15, 19], which have been referred to this court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Stachowiak is not disabled under the Act. Accordingly, the court recommends that the Commissioner's Motion for Summary Judgment [19] be GRANTED, Stachowiak's Motion for Summary Judgment [15] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the Commissioner's decision be AFFIRMED.

**II.    REPORT**

 **A.    Procedural History**

On November 20, 2008, Stachowiak filed applications for DIB and SSI, alleging a disability onset date of October 1, 2008. (Tr. 128-37). These applications were denied initially on March 26, 2009. (Tr. 116-23). Stachowiak filed a timely request for an administrative hearing, which was held on June 4, 2010, before ALJ Jacqueline Hall-Keith. (Tr. 24-87). Stachowiak, who was not represented by an attorney, testified at the hearing, as did vocational expert ("VE") Erin O'Callahan. (*Id.*). On August 16, 2010, the ALJ issued a written decision in which she found that Stachowiak was not disabled. (Tr. 14-21). On March 21, 2012, the Appeals Council denied review. (Tr. 1-4). Stachowiak filed for judicial review of the final decision on May 18, 2012 [1].

 **B.    Background**

  *1.    Disability Reports*

In a November 20, 2008 disability field office report, Stachowiak reported that his alleged onset date was October 1, 2008. (Tr. 153). The claims examiner noted that, during a face-to-face interview, Stachowiak did not have any difficulty understanding, concentrating, talking, or answering questions. (Tr. 154).

In an undated disability report, Stachowiak indicated that his ability to work is limited by a ruptured disc in his neck. (Tr. 157). When describing how this condition limits his ability to work, Stachowiak stated, "I have numbness in my left arm, and I can't do any bending or lifting." (*Id.*). Stachowiak reported that this condition first interfered with his ability to work on October 1, 2008, and he became unable to work on that date. (*Id.*). Prior to that, he stopped working in June of 2007, when he was laid off from his job as a porter at a car dealership, "but not because of [his] disability." (Tr. 157-58). Between 1976 and 2001, Stachowiak, who

2

completed the eleventh grade but had no further schooling, worked as a machine operator in various machine shops. (Tr. 158, 161). In his machine operator job, he was required to stand for seven hours during an eight-hour workday and lift up to 90 pounds. (*Id.*). Stachowiak indicated that he treated with Dr. Stephen Boodin at William Beaumont Hospital for the ruptured disc in his neck, but he had not undergone any medical tests. (Tr. 159-60). In addition, Stachowiak had not received any treatment for any alleged mental impairments. (Tr. 159). At the time of the report, he was not taking any medications. (Tr. 160).

In a function report dated December 15, 2008, Stachowiak reported that he lives in an apartment with his girlfriend. (Tr. 172). When asked to describe what he does from the time he wakes up until going to bed, Stachowiak said only, "Worry about dis[c] in neck." (*Id.*). When asked what he could do before the onset of his condition that he is no longer able to do, Stachowiak said "lift" and "bend." (Tr. 173). His condition does not interfere with his ability to sleep. (*Id.*). Stachowiak is able to attend to his own personal care, although he has some trouble putting socks on and has to be careful how he moves. (*Id.*). He does not need reminders to attend to his personal care or take medication. (Tr. 174). He prepares his own meals "sometimes," and indicated that his cooking habits have not changed since the onset of his condition. (*Id.*). He does "some" household chores. (*Id.*). He goes outside every day, and is able to walk, drive a car, and ride a bicycle. (Tr. 175). He is able to go shopping once a week. (*Id.*). He does not pay bills, count change, handle a savings account, or use a checkbook/money orders because his money was "stolen." (Tr. 175-76).[1] He has no hobbies, he does not spend time with others, and he has become "moody" since the onset of his condition. (Tr. 176-77). He claims that when he goes places he needs someone to accompany him. (Tr. 176).

---

[1] Stachowiak appears to be referring to his belief that his ex-wife was awarded an unfairly high share of his assets in their divorce case. *See infra* at 5-6.

When asked to identify specific functions impacted by his condition, Stachowiak checked lifting, squatting, bending, standing, reaching, sitting, kneeling, stair climbing, concentration, following instructions, and getting along with others. (Tr. 177). He claims that, since the onset of his condition, he cannot walk very far, cannot pay attention very long, does not finish what he starts, and cannot follow written or spoken instructions very well. (*Id.*). He does not get along well with authority figures and claims he was fired from a job because of problems getting along with others when "they find [sic] about disc problem." (Tr. 178). He does not have trouble handling stress or changes in routine, and he has no unusual behaviors or fears. (*Id.*).

In an updated function report, dated February 5, 2009, and completed by Linda McVicker as a result of a telephone interview, Stachowiak reported much of the same information. (Tr. 180-87). Those aspects of the updated report that differ from his December 2008 function report are discussed in greater detail herein. Specifically, Stachowiak reported that, since the onset of his condition, he can no longer exercise, go horseback riding, shovel snow, do yard work, or "do things" with his children. (Tr. 181). His condition interferes with his sleep, and he has to sleep on his right side. (*Id.*). He is able to attend to his own personal care, although he has some trouble putting on socks and pulling up his pants. (*Id.*). He said he and his girlfriend are "neat freaks so there's really not much to clean up," but that when he does clean, it takes him a "normal time" to do so. (Tr. 182). He reported being able to go out alone. (Tr. 183, 184). He is able to pay bills, count change, handle a savings account, and use a checkbook/money orders, although he does not have any money coming in. (Tr. 183-84). He watches television, he talks to a friend on the phone, he goes out alone, and he does not have any problem getting along with others. (Tr. 183-85).

When asked to identify specific functions impacted by his condition, Stachowiak checked

4

lifting, squatting, bending, standing, kneeling, seeing, memory, concentration, using hands, and getting along with others. (Tr. 185). He is "depressed" about his divorce, and "keeps going over and over" it, which "messes up his concentration and getting along with others." (*Id.*). He does not have trouble walking, but he can only pay attention for "about 5 minutes." (*Id.*). He does not have trouble following written or spoken instructions, and he gets along well with authority figures.[2] (Tr. 185-86). In the "remarks" section of the report, Ms. McVicker stated:

> [Stachowiak] kept talking about his divorce and all the things his ex-wife has done to him. He said he can't see his kids very often. He never stopped talking about his ex-wife. He also stammered a lot. I had to keep bringing him back to the questions I was asking him. He said he will never get over this. He said he talks about this every day and when he's with other people that's all he can think or talk about.
>
> He also said he was at the end of his rope and he can't take it anymore. He said everybody is trying to screw him.

(Tr. 187).

In an undated disability appeals report, Stachowiak reported that his condition had not changed, and he had no new physical or mental limitations. (Tr. 191). Since the time of his last report, he had not treated with any medical providers for any physical or mental impairments that limit his ability to work, had not undergone any medical tests, and had not taken any medication. (Tr. 191-92).

### 2. *Stachowiak's Testimony*

At the June 4, 2010 hearing before the ALJ, Stachowiak testified that he is divorced. (Tr. 39). He completed high school but had no further schooling or specialized training. (Tr. 39-40). He suffered a work-related injury to his neck in 1989, was off work until 1993 (receiving

---

[2] Although Stachowiak indicated in his December 2008 function report that he had been fired from a job because of problems getting along with other people (Tr. 178), he claimed in his February 2009 function report that this is not the case. (Tr. 186).

5

worker's compensation), and eventually settled his worker's compensation claim for $100,000. (Tr. 41, 55). After that, Stachowiak attempted to work in other machine operator positions, as well as at a storage company as a security guard. (Tr. 47-50). Stachowiak last worked in July of 2007, when he was "let go" from his job as a porter at a car dealership because the dealership "outsourced" his position. (Tr. 41-42). Since that time, he has attempted to find other work, but he claims no one will hire him because of his disability. (Tr. 42).

Stachowiak testified that he has sharp pain (a 10/10 on the pain scale) in his neck when he tries to get out of bed in the morning or get into or out of his car. (Tr. 55-56). Once he gets through the painful motion, however, his neck no longer hurts. (Tr. 56). He has some numbness and weakness in his left hand and arm. (Tr. 62-63). He does not get any treatment for his neck, left arm, or left hand, and the only medication he takes is aspirin. (Tr. 62, 64).

Stachowiak testified that his "mental impairment" was caused by his divorce. (Tr. 65-66). He is sad, has crying spells, and has difficulty concentrating and getting along with people, but he denies suicidal thoughts or hallucinations. (Tr. 67). He does not have trouble sleeping. (Tr. 68). He apparently sought treatment at a "wellness center" in Florida during the 1990s but has received no mental health treatment since that time. (Tr. 65, 69).

Stachowiak spends most of his days on the phone, calling political figures and various governmental "committees" about the manner in which his divorce was handled by the court. (Tr. 64-65, 70-71, 76). He attends Detroit Tigers baseball games. (Tr. 70). He is able to walk 1½ miles and sit or stand for "a couple hours" at a time. (Tr. 71). He can lift 20 or 25 pounds on a regular basis. (Tr. 72). He is able to drive, go grocery shopping, load and unload the dishwasher, do laundry, change the beds, vacuum, take out the garbage, and perform other housework. (Tr. 75). He does not do yard work because he lives in a condominium. (*Id.*). He

drinks one six-pack of beer per week. (Tr. 76).

Additionally, Stachowiak testified that he was scheduled to see a physician the following Monday. (Tr. 36). As a result, the ALJ indicated that she would leave the record open for ten business days so that Stachowiak could provide records from this visit. (Tr. 37).

      3.    *Medical Evidence*

          *(a)*    *Treating Sources*

There are very few records from treating sources during the time surrounding Stachowiak's alleged onset date. Indeed, there are very few treatment records in the file at all. The earliest records are from 1989-1990 when Stachowiak saw Dr. Stephen Boodin as a result of his October 1998 work injury to his neck from lifting a heavy object. (Tr. 238). Dr. Boodin first saw Stachowiak on January 24, 1989; his neck pain had disappeared by that time, but Stachowiak complained of numbness and weakness in his left arm. (*Id.*). Dr. Boodin found that x-rays of Stachowiak's cervical spine were "essentially normal without any significant degenerative change." (*Id.*). An EMG performed by a different doctor showed "moderately severe left C-7 radiculopathy." (*Id.*). Stachowiak was not taking any medications at the time. (*Id.*). Dr. Boodin felt he had not had an adequate trial of conservative care, and suggested that Stachowiak engage in physical therapy. (Tr. 239). Dr. Boodin felt that Stachowiak was "disabled," but only for 1-3 months. (*Id.*).

Dr. Boodin next saw Stachowiak on March 27, 1989, and found he "has improved and has a normal neurologic examination [] except for decreased sensation at C-6 and C-7…" (Tr. 237). Dr. Boodin indicated that Stachowiak did not need any further physical therapy and that he could return to work. (*Id.*). However, he limited Stachowiak to no heavy lifting over 25 pounds and no excessive bending. (*Id.*). On September 22, 1989, Dr. Boodin's notes show that despite his earlier restrictions, Stachowiak had been doing "heavier work with a lot of bending and

7

twisting." (Tr. 236). However, Dr. Boodin found Stachowiak's neurologic exam to be normal. (*Id.*). Dr. Boodin reiterated the same restrictions he had given six months earlier, and kept Stachowiak off work for two weeks. (*Id.*). Dr. Boodin indicated that if Stachowiak's job required heavier lifting/bending, then he would consider Stachowiak "disabled." (*Id.*).

Stachowiak then saw Dr. Boodin every few months between January and June 2000. At his January appointment, Stachowiak "[felt] pretty good and is neurologically intact," though he "gets pain" after working and had decreased sensation at C-6. (Tr. 235). Dr. Boodin indicated that Stachowiak "needs to be limited to 35 lbs. maximum and 25 lbs. on a regular basis. Otherwise, he can fulfill the duties of his job." (*Id.*). Stachowiak saw Dr. Boodin in March 1990 and reported that he had been to the emergency room a week earlier with pain in his neck. (*Id.*). However, Dr. Boodin indicated that Stachowiak was neurologically intact and his pain had disappeared. (*Id.*). On May 23, 1990, Stachowiak followed-up with Dr. Boodin. (*Id.*). Because he was having "continuing problems," Dr. Boodin instructed Stachowiak to get an MRI. (*Id.*). On June 12, 1990, Stachowiak returned with the MRI which showed "an apparent ruptured disc at C-6-7 to the left and [] more of a C-7 radiculopathy." (*Id.*). Dr. Boodin discussed surgical options, which Stachowiak wanted time to consider. (*Id.*). Dr. Boodin recommended physical therapy "for the meantime." (*Id.*). It is unclear whether Stachowiak followed-up further with Dr. Boodin as the next medical record in the file is dated 18 years later.

On October 22, 2008, Stachowiak saw Dr. Thomas Preston with complaints of neck pain and ear drainage. (Tr. 196). At that visit, Stachowiak told Dr. Preston that he did not want to work and that he was "sick of the system." (*Id.*). Dr. Preston advised Stachowiak that he cannot "label him as totally disabled" and that he should see a psychiatrist. (*Id.*).

It appears that Stachowiak also provided two pages of medical records after the hearing

8

before the ALJ. (Tr. 240-41). These records relate to Stachowiak's visit to an outpatient clinic on June 8, 2010. (*Id.*). Apparently, Stachowiak complained of neck pain, and the doctor ordered blood work and an MRI of his neck. (*Id.*). The MRI and blood work results were not submitted and are not a part of the record.

*(b)    Consultative and Non-Examining Sources*

*(1)    Dr. Sadiq*

On February 5, 2009, Stachowiak underwent a consultative examination with Dr. Sadiq, a physical medicine specialist. (Tr. 197-98). X-rays taken that day show degenerative disc disease at the C6-7 level. (Tr. 199). In his report, Dr. Sadiq noted that Stachowiak complained of intermittent neck pain, which was sharp in nature and radiated down to the left upper extremity. (Tr. 197). He also complained of numbness, tingling, and weakness of the left upper extremity. (*Id.*). On examination, however, there were no spasms, Spurling's maneuver was negative, and dexterity and deep tendon reflexes were intact. (Tr. 197-98). Stachowiak's grip strength was within normal limits on the right and $4^+/5$ on the left. (Tr. 197). Muscle strength "with poor effort" was $4^+/5$ on the left and within normal limits on the right. (Tr. 198). In summary, Dr. Sadiq opined that there were "no definite objective findings" on examination. (*Id.*).

*(2)    Dr. Sung Ran Cho*

On February 21, 2009, Stachowiak underwent a consultative psychological examination with Dr. Sung Ran Cho, a psychiatrist. (Tr. 205-08). At the examination, Stachowiak said, "I lost everything I owned in 1997 and I had a nervous breakdown. I feel better now." (Tr. 205). Dr. Cho indicated that Stachowiak was anxious and talkative and "tended to ramble about his divorce settlement," but was in good contact with reality. (Tr. 207). Dr. Cho diagnosed Stachowiak with dysthymic disorder and alcohol dependence and rated his prognosis as "fair for

9

functioning." (Tr. 208).

### (3)     *Physical Residual Functional Capacity Assessment*

On March 25, 2009, Nancy Sarti completed a physical residual functional capacity ("RFC") assessment. (Tr. 227-34). Ms. Sarti examined Stachowiak's records and concluded that he retained the ability to occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk for 6 hours in an 8-hour work day, sit for 6 hours in an 8-hour work day, and engage in unlimited pushing/pulling. (Tr. 228). Ms. Sarti opined that Stachowiak had no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 229-31).

### (4)     *Mental Residual Functional Capacity Assessment*

On March 21, 2009, Leonard Balunas, Ph.D., reviewed Stachowiak's records and completed a Psychiatric Review Technique and mental RFC assessment. (Tr. 209-26). Dr. Balunas noted that Stachowiak suffers from dysthymic disorder, personality disorder, and substance addiction disorder. (Tr. 212, 216, 217). He opined that Stachowiak is moderately limited in his activities of daily living, social functioning, and maintaining concentration, persistence, and pace, with no episodes of decompensation. (Tr. 219). Specifically, in his RFC assessment, Dr. Balunas opined that Stachowiak is not significantly limited in his ability to remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; perform activities within a schedule and maintain regular attendance; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychological symptoms and to perform at a consistent pace without an unreasonable number of length of rest periods; make simple work-related decisions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from

10

supervisors; get along with co-workers without distracting them; maintain socially appropriate behavior. (Tr. 223-24). Dr. Balunas further opined that Stachowiak is moderately limited in the ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; and respond appropriately to changes in the work setting. (*Id.*). Dr. Balunas concluded that Stachowiak is "able to perform unskilled work involving 1 and 2 step instructions with limited need for sustained concentration, only incidental contact with the general public and only occasional, minor changes in work locations or job duties." (Tr. 225).

### 4. *Vocational Expert's Testimony*

Erin O'Callahan testified as an independent vocational expert ("VE") at the hearing before the ALJ. (Tr. 81-86). The VE characterized Stachowiak's past relevant work as a machine operator as unskilled in nature and medium exertion. (Tr. 83). The ALJ asked the VE to imagine a claimant of Stachowiak's age, education, and work experience, who was able to perform medium unskilled work. (Tr. 85). The VE testified that the hypothetical individual would be capable of performing Stachowiak's past relevant work as a machine operator. (*Id.*). The VE further testified that the hypothetical individual also would be capable of working in the positions of packer (12,000 jobs in southeast Michigan), cook helper (11,000 jobs), and janitor/cleaner (5,000 jobs). (*Id.*).

**C.    Framework for Disability Determinations**

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

11

> death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Stachowiak is not disabled under the Act. At Step One, the ALJ found that Stachowiak has not engaged in substantial gainful activity since October 1, 2008, his alleged onset date. (Tr. 16). At Step Two,

the ALJ found that Stachowiak has the severe impairments of degenerative disc disease of the cervical spine, dysthymic disorder, and alcohol dependency. (*Id.*). At Step Three, the ALJ found that Stachowiak's severe impairments do not meet or medically equal a listed impairment. (Tr. 16-18). The ALJ then assessed Stachowiak's residual functional capacity ("RFC"), concluding that he is capable of performing unskilled work at the medium exertional level. (Tr. 18-19). At Step Four, the ALJ determined that Stachowiak is able to perform his past relevant work as a machine operator. (Tr. 19-21). Although the ALJ determined that Stachowiak is capable of performing past relevant work, she alternatively found, based in part on the VE's testimony, that Stachowiak also is capable of performing a significant number of jobs in the national economy. (Tr. 20-21). As a result, the ALJ concluded that Stachowiak is not disabled under the Act. (Tr. 21).

  **E.**   **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.     Analysis**

In her opinion, the ALJ found that Stachowiak has the severe impairments of degenerative disc disease of the cervical spine, dysthymic disorder, and alcohol dependency. (Tr. 16-18). The ALJ further found that these impairments impose limitations on Stachowiak's ability to work. As a result, she concluded that Stachowiak has the RFC to perform unskilled

medium work. (Tr. 18-19). Stachowiak does not explicitly challenge the ALJ's RFC assessment. However, because he suffers from a mental impairment and is not represented by counsel,[3] the court will first discuss whether the ALJ's RFC finding is supported by substantial evidence. The court will then turn to Stachowiak's vague argument that the ALJ failed to consider medical evidence he submitted after the hearing in this matter.

### 1. *The ALJ's RFC Finding is Supported by Substantial Evidence*

As set forth above, the ALJ concluded that Stachowiak has the RFC to perform medium unskilled work. (Tr. 18-19). Although Stachowiak does not explicitly challenge this finding, a review of the record nevertheless demonstrates that it is consistent with Stachowiak's own testimony, his statements in disability reports, and the available medical evidence.

To begin with, the ALJ's RFC finding is consistent with Stachowiak's own statements, made both in disability reports and at the hearing. (Tr. 19). Stachowiak indicated that his ability to work is limited by a ruptured disc in his neck. (Tr. 157). The only medication he takes for pain is aspirin, and he has received no treatment for alleged numbness and weakness in his left arm and hand, the only one supposedly affected. (Tr. 62-64, 181). He is able to attend to his own personal care, do household chores, go grocery shopping, drive a car, and attend Detroit Tigers games. (Tr. 70, 174-75). He testified that he experiences "sharp" pain when he tries to get out of bed, or into and out of a car, but after he completes the movement at issue, his neck no longer hurts. (Tr. 55-56). He is able to walk 1½ miles, sit or stand for "a couple hours" at a time, and lift 20 or 25 pounds frequently. (Tr. 71-72). Stachowiak's own testimony in this respect supports the ALJ's conclusion that he can perform medium work. *See* 20 CFR

---

[3] Although Stachowiak was not represented by an attorney at the hearing before the ALJ, and is proceeding *in pro per* in the instant federal court action, the record reveals that he was represented by an attorney at some stages of the social security application process. (Tr. 7).

15

§404.1567(c).

The medical evidence in the record also supports the ALJ's RFC finding. The ALJ cited statements Stachowiak made to Dr. Thomas Preston in October of 2008, when he indicated: "I don't want to work. I'm sick of the system…I got divorced and they gave her everything. I'm mentally screwed up and I don't want to work anymore." (Tr. 19, 196). As a result, Dr. Preston made clear to Stachowiak that he could not "label him as totally disabled." (Tr. 196). The ALJ also cited the consultative physical examination conducted by Dr. Sadiq in February of 2009 which revealed "no definite objective findings" to support Stachowiak's complaints of neck pain. (Tr. 19, 198). Finally, the ALJ cited the conclusion of the state examiner, Nancy Sarti, that Stachowiak retained the ability to occasionally lift 50 pounds, frequently lift 25 pounds, and stand/walk/sit for 6 hours in an 8-hour workday. (Tr. 19, 228). These findings are consistent with the definition of medium work as stated in 20 C.F.R. §404.1567(c) and with the ALJ's RFC assessment. (Tr. 18).

The ALJ also accommodated Stachowiak's mental impairments by restricting him to unskilled work. (Tr. 18-19). Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time (generally less than 30 days). 20 CFR §404.1568(a). In formulating her mental RFC assessment, the ALJ considered the reports of both Dr. Cho (who diagnosed Stachowiak with dysthymic disorder and alcohol dependence and rated his prognosis as "fair" for functioning) and Dr. Balunas (who reviewed Stachowiak's medical records and concluded that he retained the ability to perform unskilled work).[4] (Tr. 19, 208, 225). The ALJ also explained that, in addition to these two reports, she

---

[4] The ALJ did not incorporate into her RFC finding Dr. Balunas' conclusion that Stachowiak was limited to "unskilled work involving 1 and 2 step instructions with limited need for sustained concentration, only incidental contact with the general public and only occasional, minor

considered "the paucity of clinical deficits noted in the treatment records and examination reports,"[5] "the absence of inpatient psychiatric hospitalization," and Stachowiak's continued activities. (Tr. 19). Based on a review of the record evidence, the ALJ's limitation of Stachowiak to unskilled work is supported by substantial evidence.

### 2. Stachowiak's Argument that the ALJ Failed to Consider Medical Records Submitted After the Hearing is Without Merit

In his motion for summary judgment, which is only one-page in length, Stachowiak

---

changes in work locations or job duties." (Tr. 225). Stachowiak has not challenged the ALJ's findings in this regard and, thus, any such argument is waived. Moreover, because Dr. Balunas was not a treating physician, the ALJ was not required to articulate any reasons for the weight she accorded various portions of his opinion. *See Burns v. Commissioner of Soc. Sec.*, 2012 WL 4356805, at *6 (W.D. Mich. Sept. 24, 2012) (citing *Smith v. Commissioner of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). And, in discussing Stachowiak's difficulties in concentration, persistence or pace, the ALJ made clear that her specific finding was that Stachowiak "is no longer able to handle *complex* tasks" (Tr. 17) (emphasis added), which necessarily would not be involved in the "unskilled" work to which she limited him. *See* 20 CFR 404.1568(a). The court also notes Dr. Balunas' finding that Stachowiak was not significantly limited in his ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 224). Evidence also supports the ALJ's decision not to include in the RFC limitations to only "incidental contact with the general public" or "occasional, minor changes in work locations or job duties." Stachowiak reported that he goes out into public alone, attends Detroit Tigers games, and does not have any problem getting along with others (Tr. 70, 183-86), and Dr. Balunas found that Stachowiak was not significantly limited in his ability to maintain socially appropriate behavior, to make simple work-related decisions, and to ask simple questions or request assistance when needed. (Tr. 223-24). Here, where the ALJ's decision to limit Stachowiak to medium unskilled work is supported by substantial evidence in the record, her failure to adopt each and every one of Dr. Balunas' conclusions does not constitute error warranting remand.

[5] To the extent any of Dr. Boodin's notes indicate that Stachowiak was "disabled," the ALJ did not err in failing to credit them. First, Dr. Boodin never actually found Stachowiak "disabled," within the meaning of the Act (*i.e.*, that he was unable "to engage in any substantial gainful activity…"). 42 U.S.C. §1382c(a)(3)(A). Rather, he merely used that term to indicate that Stachowiak could not perform the heaviest levels of work he had been performing. (Tr. 236, 239) (indicating that Stachowiak was "disabled," but only for 1-3 months, and that Stachowiak would be "disabled" if his job insisted that her perform heavier lifting/bending than Dr. Boodin found him capable of performing). Moreover, an ALJ is not required to give any special weight to a treating source's conclusion that a claimant is disabled, as this conclusion is reserved to the Commissioner alone, based on all the evidence of record. 20 C.F.R. § 404.1527(e)(1), (e)(3).

makes a cursory reference to the fact that, after the hearing before the ALJ, he was "to bring more medical records for more information . . . ." (Doc. #15 at 1). Liberally construed, Stachowiak appears to be arguing that the ALJ instructed him to submit additional medical records, that he did so, and that the ALJ then failed to consider these records. As the Commissioner correctly points out, a cursory assertion such as this typically does not preserve an issue for judicial review. *See McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones.") (internal quotations omitted). Nevertheless, because Stachowiak is not represented by an attorney, and for the sake of completeness, the court will address this argument.

As Stachowiak suggests, the ALJ agreed to hold open the record for ten business days following the hearing so that he could provide additional medical records. (Tr. 37, 86). At the time of the hearing, Stachowiak had submitted medical records labeled as Exhibits 1F through 7F. (Tr. 28-29). The record now includes a medical record labeled Exhibit 8F, though it is not clear whether Stachowiak submitted this additional medical record within ten business days of the hearing as he was instructed to do. (Tr. 240-41). This two-page medical record, pertaining to Stachowiak's visit to an outpatient clinic on June 8, 2010, provides no evidence of disability or of greater functional limitations than those imposed by the ALJ. Indeed, this record indicates only that Stachowiak complained of neck pain, and that an MRI of his neck and blood work were ordered. (*Id.*). Neither the MRI results nor the blood work results were submitted, and they are not a part of the record. Even though the ALJ did not explicitly discuss this medical record in her opinion, there is no requirement that she do so. *See Kornecky*, 167 F. App'x at 508 ("[A]n

ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.").[6] Simply put, the additional medical record submitted by Stachowiak does not undermine the ALJ's conclusions.

## III. CONCLUSION

For the foregoing reasons, the court RECOMMENDS that the Commissioner's Motion for Summary Judgment [19] be GRANTED, Stachowiak's Motion for Summary Judgment [15] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: January 11, 2013         s/David R. Grand
Ann Arbor, Michigan         DAVID R. GRAND
       United States Magistrate Judge

## NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

---

[6] The Appeals Council did consider this record in denying Stachowiak's request for review. (Tr. 1-5).

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 11, 2013.

                                              s/William Barkholz for Felicia M. Moses
                                              FELICIA M. MOSES
                                              Case Manager